USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: FEB 2 5 2013

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
KENNETH FRANCIS,

                      Plaintiff,

      -v-                                                  12 Civ. 01362 (AJN)

UNITED STATES OF AMERICA,                          OPINION

                      Defendant.
-------------------------------------------------------------------X

ALISON J. NATHAN, District Judge:

Petitioner Kenneth Francis seeks a writ of error *coram nobis*[1] to vacate his conviction and sentence in *U.S. v. Francis*, 07-CR-0672, based on the alleged ineffective assistance of his defense counsel. For the reasons discussed below, Petitioners writ of error *coram nobis* is denied.

**Background and Procedural History:**

Petitioner is a native of Jamaica, who moved to the United States in 1978, at the age of eight, (Francis Decl. at ¶10), and who is living in this country as a permanent resident, (Pet'r's. Br. at 2). He is married to an American citizen and has four children who are American citizens by birth. (Pet'r's. Br. at 3)

On July 23, 2007, an indictment was filed in the Southern District of New York alleging that Petitioner, in conspiracy with five family members, engaged in a credit card fraud scheme, which resulted in over $285,000 in fraudulent activity. The scheme, as the Government described it, involved using wrongfully obtained credit cards to make a variety of fraudulent

---

[1] Because Petitioner, through counsel, has stated that he understands the consequences and is "willing to recharactertize th[is] application as a *habeas corpus* petition pursuant to 28 U.S.C. § 2255," (Pet'r's Second Supplemental Br. at 3; Gerard Aff. at ¶¶ 3-4), the Court need not decide if his writ of error *coram nobis* should instead have been brought pursuant to that statutory provision, as a *habeas corpus* petition. *See*, *Adams v. U.S.*, 155 F.3d 582, 584 (2d Cir. 1998) ("[D]istrict courts should not recharacterize a motion purportedly made under some other rule as a motion made under § 2255 unless (a) the movant, with knowledge of the potential adverse consequences of such recharacterization, agrees to have the motion so recharacterized.").

retail purchases, including a number of purchases from the department store Nordstrom's. (Gov't Br. at 2)   Among other things, the conspirators took advantage of that store's return policy, which allowed customers to return items for credit on a different credit card than the one used to make the purchases, by making purchases on illegally obtained credit cards and having the returns credited to their personal accounts.  Petitioner's bank records showed that his account, alone, was credited with over $20,000 in Nordstrom's returns during the relevant time period.

Petitioner was charged with two of the three counts in the indictment:  Count One, alleging conspiracy to commit access device fraud, in violation of 18 U.S.C. § 1029(b)(2), and Count Two, alleging access device fraud, in violation of 18 U.S.C. § 1029(b)(1) and (2). Petitioner pleaded not guilty to the charges at his arraignment in July 2007, but, in December 2008, pleaded guilty to both Counts One and Two, pursuant to a *Pimental* letter, but without the benefit of a plea agreement.  (Gov't Br. at 3)  In February 2010, Petitioner was sentenced to 26 months confinement.  This sentence was later amended and reduced to 20 months, due to miscalculations in the guidelines estimates as to his Criminal History Category, *see* U.S.S.G. § 4A1.1.  (Gov't Br. at 6-8)  On September 6, 2011,  an amended judgment was entered, (Pet'r's. Supplemental Br. at 2), and, the next day, on September 7, 2011, Petitioner filed an appeal of that judgment.  At the time of this opinion, that appeal is still pending.  (Pet'r's. Supplemental Br. at 2; Gov't Supplemental. Br. at 1)

As a result of his conviction, in May 2011, the U.S. Department of Homeland Security ("DHS") began removal proceedings against Petitioner under section 240 of the Immigration and Nationality Act. (Pet'r's. Br. Ex. F) DHS alleged that Petitioner was "subject to removal from the United States pursuant to section 237(a)(2)(A)(iii) of the Immigration and Nationality Act, as

2

a result of having 'been convicted of an aggravated felony . . . to an offense that (i) involve[d] fraud or deceit in which the loss to the victim or victims exceeds $10,000 . . . .'" (Pet'r's. Br. Ex. F at 4) Upon completing his term of confinement, Petitioner was released to immigration officials, and is currently in immigration custody defending against these deportation proceedings. (Francis Decl. at ¶ 8)

Petitioner filed this action in February 2012, requesting a writ of error *coram nobis* to vacate the above-described criminal conviction and judgment in order to correct an alleged violation of his right to effective assistance of counsel that he claims would result in his being removed from the United States in violation of his rights under the Fifth and Sixth Amendments of the United States Constitution. (Pet'r's. Br. at 2-3) In his petition, he alleges that his defense counsel failed to inform him, at any time prior to pleading guilty or to sentencing, that a conviction of the offenses to which he intended to plead guilty would result in his deportation, that this failure rendered her counsel ineffective under *Padilla v. Kentucky*, 559 U.S. 356, __, 130 S.Ct. 1473, 1483, 1488 (2010), and that he would not have pleaded guilty had he known that doing so would result in his deportation.

**Ineffective Assistance of Counsel**

A writ of error *coram nobis* should issue "only where extraordinary circumstances are present." *See Nicks v. U.S.*, 955 F.2d 161, 167 (2d Cir. 1992). Ineffective assistance of counsel may justify a writ of error *coram nobis*. *See Matos v. U.S.*, No. 99-CR-0137, 2012 WL 569360, *2 (S.D.N.Y. Feb. 16, 2012). To support a claim of ineffective assistance of counsel, a petitioner must: "(1) demonstrate that his counsel's performance 'fell below an objective standard of reasonableness' in light of 'prevailing professional norms,' and (2) 'affirmatively prove prejudice' arising from counsel's allegedly deficient representation." *U.S. v. Cohen*, 427 F.3d

3

164, 167 (2d Cir. 2005) (quoting *Strickland v. Washington*, 466 U.S. 668, 688 (1984) (internal citations omitted). Because, as the parties agree, Petitioner's conviction was on direct appeal when the Supreme Court issued its opinion in *Padilla*, 559 U.S. __, 130 S.Ct. at 1483, 1488 (holding that "when the deportation consequence [of pleading guilty] is truly clear," "counsel must inform her client whether his plea carries a risk of deportation"), and remains on direct appeal now, if his allegation that defense counsel failed to advise him of the deportation consequences of his guilty plea is true, he will have established deficient performance under the first prong of the *Strickland* test.[2] *See Boakye v. U.S.*, No. 09-CV-08217, 2010 WL 1645055, *4-5 (S.D.N.Y. Apr. 22, 2010).

However, because Petitioner has failed to demonstrate prejudice under the second prong of the *Strickland* test, the Court need not resolve the question whether Petitioner's counsel was in fact deficient under *Strickland* and *Padilla*. *See Strickland*, 466 U.S. at 697 ("A court need not first determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies."); *see also Boakye*, 2010 WL 1645055, at *5. As the Supreme Court has established, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *Strickland*, 466 U.S. at 697. This is so "even where counsel has committed serious error, particularly where the Government's case is strong." *U.S. v. Weisser*, 417 F.3d 336, 343-44 (2d Cir. 2005) (citing *Strickland*, 466 U.S. at 697; *Strouse v.*

---

[2] The Government initially argued that *Padilla* did not apply retroactively to this case. (Gov't Br. at 1) But the Court, noting that Petitioner's conviction was not final, asked for additional briefing on whether retroactivity was the pertinent question, and, if not, whether relief should be granted. (Order, *Francis v. U.S.*,12-CV-01362, Docket Entry 6) The Government now concedes that the retroactivity issue is not relevant to this petition. (Gov. Supp. Br. at 1-3) Thus, the Supreme Court's recent decision in *Chaidez v. U.S.*, __ S.Ct. __, 2013 WL 610201 (Feb. 20, 2013), which held that *Padilla* did not have retroactive effect, does not bear on this case. 2013 WL 610201, at *10 ("The Court announced a new rule in *Padilla*. Under *Teague* [*v. Lane*, 489 U.S. 288 (1989)], defendants whose convictions become final prior to *Padilla* therefore cannot benefit from its holding.").

*Leonardo,* 928 F.2d 548, 556 (2d Cir. 1991) (internal punctuation and citations omitted)).

**Prejudice**

To establish prejudice at the second prong of the *Strickland* test, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694 (noting that "[a] reasonable probability is a probability sufficient to undermine confidence in the outcome); *U.S. v. Venturella,* 391 F.3d 120, 135 (2d Cir. 2004). As the Supreme Court has established, "it is often quite difficult for petitioners who have acknowledged their guilt to satisfy *Strickland*'s prejudice prong." *Padilla,* 559 U.S. at __, 130 S.Ct. at 1485 n. 12. To show prejudice in this context, a petitioner must "demonstrate 'a reasonable probability that, but for counsel's errors, he would not have [decided to plead] guilty and would have insisted on going to trial.'" *Premo v. Moore,* __U.S. __, 131 S.Ct. 733, 743 (2011) (quoting *Hill v. Lockhart,* 474 U.S. 52, 59 (1985)). This inquiry requires a fact-specific analysis that evaluates the weight of the evidence, the consequences of various legal options, and any circumstances that may affect a decision to enter a plea. *See e.g., Premo,* 131 S.Ct. at 744; *U.S. v. Couto,* 311 F.3d 179, 187 n. 9 (2d Cir. 2002); *Matos,* 2012 WL 569360, at *3. "[T]o obtain relief on this type of claim, a petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances." *Padilla,* 559 U.S. at __, 130 S.Ct. at 1485 (citing *Roe v. Flores-Ortega,* 528 U.S. 470, 480, 486 (2000)); *see also U.S. v. Arteca,* 411 F.3d 315, 321-22 (2d Cir.2005); *Bhindar v. U.S.,* No. 11-CV-03911, 2013 WL 171084, *5 (S.D.N.Y. Jan. 16, 2013).

In this case, Petitioner argues that he was at no point advised of the deportation consequences of pleading guilty and that, had he known of these consequences, he would not have pleaded guilty and would have instead insisted on going to trial. (Francis Decl. at ¶¶ 10-14)

For the purpose of this petition, the Court will assume the truth of Petitioner's first assertion: that throughout the criminal proceedings his counsel never discussed his immigration status with him, (Francis Decl. at ¶ 10), that counsel did not advise him that his guilty plea would subject him to mandatory deportation, (Francis Decl. at ¶ 10), and that, at the time of his plea, neither the Court nor his counsel advised him of the immigration consequences of his plea, (Francis Decl. at ¶ 11).[3] However, while the Court will assume these facts for the purpose of this petition, it bears noting that there is evidence in the record that Petitioner should have known that immigration consequences were a possibility because the September 18, 2009 presentence report, which both Petitioner and his counsel averred to having had time to review prior to sentencing, (Gov't Supplemental Br. at 7; Pet'r's. Br. Ex. D at 2: 16-25), stated that Petitioner "may be amendable to removal proceedings" in light of his alien status, (Gov't Br. at 7 (citing PSR at ¶ 84)).

In any event, assuming that Petitioner was unaware of the immigration consequences of his plea, his second contention is that he would not have pleaded guilty had he known, and that it would have been reasonable under the circumstances for him either to plead not guilty or to seek to vacate his guilty plea prior to sentencing. (Francis Decl. at ¶ 16) In support of this contention, Petitioner declares that at the time he pleaded guilty: (1) he had strong connections to the United States;[4] (2) he had no connection with, and no interest in returning to, Jamaica;[5] (3) his pleading

---

[3] The Government requests the Court to direct Petitioner's trial counsel to submit an affidavit addressing whether Petitioner was aware of the immigration consequences of his guilty plea. (Gov't Supplemental Br. at 9) However, even assuming he was not informed of the deportation consequences of pleading guilty, the Court finds that Petitioner has failed to "demonstrate a colorable claim of ineffective assistance." *Contino v. U.S.*, 535 F.3d 124, 128 (2d Cir. 2008). Consequently, it is unnecessary to direct such a submission or to otherwise conduct an evidentiary hearing. *See, e.g., Boakye*, 2010 WL 1645055, at *6; *c.f. Campusano v. U.S.*, 442 F.3d 770, 776 (2d Cir. 2006) ("[A] district court has discretion to determine if a testimonial hearing will be conducted."); *Chang v. United States*, 250 F.3d 79, 85 (2d Cir. 2001) (district court is exempt from requirement to conduct a hearing if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief").

[4] Petitioner declares the following: (1) "At the time of the plea I had lived in the United States for thirty years. I grew up here and was educated here, and viewed myself as an American," (Francis Decl. at ¶ 15), and (2) "At the time of the plea, I had three children (all US citizens) between the ages of five and eighteen that I cared for as a

6

guilty in no way guaranteed that he would receive a lesser sentence;[6] and (4) his conviction at trial was not predetermined because his involvement in the scheme was minimal, the evidence was lacking,[7] and the case complex and difficult to prove.[8]

In determining whether a petitioner has made the requisite showing, "[c]onclusory allegations that [a petitioner] would have insisted on proceeding to trial are generally insufficient to establish actual prejudice under *Strickland*." *Scott v. Superintendent,* No. 03-CV-06383, 2006 WL 3095760, *9 (E.D.N.Y. Oct. 31, 2006); *see also Arteca,* 411 F.3d at 322; *Silent v. Perlmann,* No. 07-CV-04524, 2008 WL 5113418, *13 (E.D.N.Y. Nov.25, 2008). Indeed, the Second Circuit generally "requires some objective evidence other than defendant's assertions to establish prejudice." *Pham v. U.S.,* 317 F.3d 178, 182 (2d Cir. 2003) (citing *U.S. v. Gordon,* 156 F.3d 376, 380–81 (2d Cir. 1998)). In the immigration context, a petitioner must "affirmatively prove prejudice" by putting forth credible evidence that he "would actually have insisted on going to trial had he known of the precise immigration consequences of his conviction." *Boakye,* 2010 WL 1645055, at *5 (citing *Strickland,* 466 U.S. at 693); *see also Zhang v. U.S.,* 543 F. Supp. 2d

---

single father, and another child that was one year old (living with his mother). Throughout their lives I have been very involved in their care, and I could not bear to be separated from them by deportation," (Francis Decl. at ¶ 18);

[5] Petitioner declares the following: "I do not know anyone in Jamaica, and I do not have any idea how I would support myself if I were deported there. In addition, my childhood memories of life in Jamaica are grim, due to the physical and mental abuse I suffered at the hands of my father, and I view Jamaica as hell on earth." (Francis Decl. at ¶ 19)

[6] Petitioner declares the following: "When I pled guilty, I faced a potential sentence of over twenty years, and there were no guarantees that I would receive a lesser sentence, so this was not a case where I was given a choice between a lesser sentence that included deportation, as opposed to a greater possible sentence if I lost at trial." (Francis Decl. at ¶ 20)

[7] Petitioner declares the following: "[M]y involvement in the credit card scheme was minimal, compared to the other participants, and there was no direct evidence that I had guilty knowledge concerning the transactions at issue." (Francis Decl. at ¶ 22)

[8] Petitioner declares the following: "Even the Prosecutor described this case as a complex and extensive credit card fraud case with hundreds (if not thousands) of transactions involving multiple defendants, and if I had been given any choice between deportation and trial, I would have made the choice to go to trail and challenge the Government's proof, instead of going to jail and being deported." (Francis Decl. at ¶ 23)

7

175, 184–85 (E.D.N.Y.2008). While petitioner has presented more than conclusory allegations, he has not presented sufficient evidence that rejecting his plea or vacating it prior to sentencing would have been rational under the circumstances, in large part because he cannot demonstrate that the case against him could have resulted in anything but eventual deportation, regardless of his decision to plead guilty or to proceed to trial.

To determine whether the decision to proceed to trial rather than plead guilty would have been rational, courts first look to the weight of the evidence against the petitioner. *See, e.g., Premo,* 131 S.Ct. at 744; *Couto,* 311 F.3d at 187 n. 9 ; *Bhindar,* 2013 WL 171084, at *5 ("it is simply not rational that [p]etitioner would have rejected the plea agreement and instead, insisted on going to trial," where "the [g]overnment had a plethora of evidence establishing [the petitioner's] participation in the conspiracy"). Here, the evidence against Petitioner was overwhelming and included traceable deposits into his bank account, time-stamped surveillance videos showing him engaging in the criminal conduct, signed purchase and return receipts, a post-arrest statement from a co-defendant, a history of committing similar crimes, and evidence that he was engaging in this same criminality after being arrested and posting bail. (Gov't Br. at 2) Petitioner pleaded guilty to the charges, pursuant to a *Pimental* letter but without a formal plea agreement, he expressed remorse at his resentencing ("I know that what I did was wrong and unlawful. And for that I am truly sorry . . . [m]y incarceration was necessary because I was going down the wrong path, a path that I can't even barely look my kids in the eye." (Gov't Br. Ex. B at 117: 6-10)), and he does not now assert that he is in fact innocent of these crimes. To the contrary, he continues to admit that he was involved in the criminal conduct. Francis Decl. at ¶ 22 ("[M]y involvement in the credit card scheme was minimal, compared to other participants . . . ."); *see Guzman v. U.S.,* No. 11-CV-02433, 2011 WL 6097128, *6 (S.D.N.Y.

Dec. 7, 2011) (finding no *Strickland* prejudice in *habeas* petition in part because petitioner pleaded guilty and did not assert innocence). And, all five of Petitioner's co-conspirators also pleaded guilty to the scheme alleged in the indictment. *See* Indictment, *U.S. v. Francis*, No. 07-CR-672, Docket Entry 30. In sum, the evidence against Defendant was strong, he acknowledges his guilt, and it is more than reasonable to assume that he would have been found guilty and faced the same immigration consequences had he proceeded to trial. *See Betancur v. U.S.*, No. 11-CV-5866, 2012 WL 4891758, *3 (S.DN.Y. Oct. 16, 2012) ("Based on the overwhelming evidence against him, it is reasonable to assume that [petitioner] would have been found guilty . . . .").

In addition to the weight of the evidence, courts also look to the consequences of the various legal options available to a petitioner, for example, whether the petitioner benefited from pleading guilty and whether the petitioner could have succeeded entirely or at least avoided the deportation consequences had he gone to trial. *See, e.g., Premo,* 131 S.Ct. at 744 (grave punishment petitioner would have faced at trial suggested that it would have been irrational for him to reject a plea deal); *Rodriguez v. U.S.*, No. 98-CR-0764, 2012 WL 6082477, *8-9 (S.D.N.Y. Dec. 4, 2012). In cases like this one, where there is "extensive evidence of [the petitioner's] guilt," the petitioner must articulate a convincing basis on which he would have foregone "the substantial benefit resulting from his plea" and risked a harsher sentence at trial. *Boakye,* 2010 WL 1645055, at *5-6; *see also Arteca,* 411 F.3d at 321-22.

As to the consequences of pleading guilty, Petitioner claims that his decision to plead guilty did not guarantee that he would receive a less severe sentence, thus weighing in favor of a finding that proceeding to trial would not have been irrational. (Francis Decl. at ¶ 20; Pet'r's. Br. at 9) His claim is based on Judge Holwell having stated, as required by Federal Rule of Criminal

9

Procedure 11(c), that he "[would] consider [the] recommended [guideline] range in determining what [Petitioner's] sentence should be," but that if the relevant factors "suggest that [he] should sentence [Petitioner] to more than the high end of the range, [he] can do that . . . up to the maximum to 22 and a half years under the statute." (Pet'r's. Ex. C at 11: 15-25) This argument lacks merit because Judge Holwell's statement is a legally accurate and required part of all plea allocutions and because, both at the sentencing and re-sentencing, Petitioner was sentenced within the applicable and agreed upon sentence range. That sentencing range, moreover, was determined based on a final offense level of 13 under the Federal Sentencing Commission Guidelines because of a three point reduction for timely acceptance of responsibility, rather than the adjusted offense level of 16 that Petitioner would have faced had he gone to trial. (Pet'r's. Br. Ex. E at 8) Accordingly, Petitioner benefited from the plea.[9]

Petitioner's close family ties and long-term residency in the United States do bolster his otherwise self-serving statement that he would not have proceeded to trial had he known of the immigration consequences. As the Supreme Court has recognized, "[p]reserving the client's right to remain in the United States may be more important to the client than any potential jail sentence . . . ." *Padilla*, 559 U.S. at __, 130 S.Ct. at 1483 (internal quotations omitted). Accordingly, courts have looked at familial ties and bonds to the United States in addressing the *Strickland* prejudice prong, *see, e.g., U.S. v. Scott*, 394 F.3d 111, 119-120 (2d Cir. 2005) (finding *Strickland* prejudice in non-criminal deportation context where petitioner demonstrated strong

---

[9] At the original sentencing, Petitioner was determined to fall into Criminal History Category IV, whereas on re-sentencing he was properly determined to fall into the Criminal History Category of III. Under Criminal History Category IV, a level 13 offense carries a suggested sentence of 24-30 months, a level 16 offense carries a suggested sentence of 33-41 months, and petitioner was sentenced to 26 months. Under Criminal History Category III, a level 13 offense carries a suggested sentence of 18-24 months, a level 16 offense carries a suggested sentence of 27-33 months, and Petitioner was sentenced to 20 months. *See, Cuevas v. U.S.*, No. 10-CV-5959, 2012 WL 3525425, *9 (S.D.N.Y. Aug. 16, 2012) ("In the situation of a party claiming that he would have gone to trial rather than pled guilty, the sentencing disparity works to undermine any such claim.").

family ties, long-term residency in the United States, and a showing of potential success but for his counsel's errors), although few have done so in the post-*Padilla* context, *see U.S. v. Akinsade*, 686 F.3d 248, 255-56 (4th Cir. 2012); *U.S. v. Orocio*, 645 F.3d 630, 645 (3rd Cir. 2011) (not unreasonable to risk lengthy prison sentence in light of familial ties and demonstration of a "chance of acquittal and the right to remain in the United States") (overruled on retroactivity grounds by *Chaidez*, 2013 WL 610201). In *Akinsade*, a post-*Padilla* ineffective assistance of counsel deportation-consequences case, the Fourth Circuit noted that it had previously "found prejudice where the defendant, whose counsel misinformed him of deportation consequences, had significant familial ties to the United States and thus would reasonably risk going to trial instead of pleading guilty and facing certain deportation." *Akinsade*, 686 F.3d at 255-56 (citing *U.S. v. Gajendragadkar,* No. 97-7267, 1998 WL 352866, *2 (4th Cir. June 3, 1998)). Applying its previous holding, the court in *Akinsade* found that the petitioner's familial ties provided added incentive to go to trial rather than risk deportation, but determined that there was prejudice based on the fact that but for his counsel's erroneous representations regarding deportation, he could have presented evidence that may have lowered the restitution amount from $10,000 to $8,000, thus removing his crime from those that require mandatory deportation. *Akinsade*, 686 F.3d at 256.

The reasoning in *Akinsade* (and the Second Circuit's decision in *Scott*, 394 F.3d at 120), comports with the required showing in *Strickland*, that a petitioner demonstrate "a reasonable probability that, but for counsel's errors, the outcome of the proceeding would have been different," *Strickland*, 466 U.S. at 694. That is, even if a petitioner can demonstrate extraordinary circumstances that would make a seemingly irrational choice to go to trial appear more reasonable, that petitioner still must demonstrate that going to trial could have resulted in a

11

different outcome. *See Akinsade*, 686 F.3d at 256; *see also, Scott*, 394 F.3d at 120; *Cuevas*, 2012 WL 3525425, at *10. (finding no prejudice where, because the petitioner was unable to "show[] that there was some possibility of acquittal, [the petitioner] would never have been a free man in the United States no matter what course of action he took."). Here, notwithstanding the formidable evidence against him, Petitioner claims that the result could have been different because the case against him was complex and extensive and because the Government lacked evidence regarding his knowledge of guilt. (Francis Decl. at ¶¶ 22-23) This does not, however, amount to evidence that can show "that he could have <u>succeeded</u> in avoiding conviction following a trial," *Guzman*, 2011 WL 609128, at *6 (emphasis added) (citing *Elisa v. Immigration and Customs Enforcement*, No. 08-CV-6204, 2008 WL 4223618, *10 (S.D.N.Y. Sept. 11, 2008)), or that he could have avoided deportation. *See Gomez v. United States*, 2013 WL 66080, *7 (E.D.N.Y. Jan. 4, 2013) (the petitioner's "cursory contention that he had a viable defense premised on lack of knowledge" was belied by the evidence of guilt on the record).

  Petitioner was charged with, pleaded guilty to, has not claimed he was innocent of, and continues to admit to, involvement in a criminal conspiracy that involved over $285,000 in losses. There was direct evidence from Petitioner's own bank records, that, at a minimum, he had received over $20,000 in fraudulent Bloomingdale's returns. Based on these facts, there is nothing from which the Court can conclude that Petitioner would have been acquitted or convicted of a lesser offense that did not require mandatory deportation proceedings. Rather, as in numerous other cases from this district, the record here shows that Petitioner would have been subject to deportation proceedings even had his counsel informed him of the deportation consequences of pleading guilty. *See, e.g., Bhindar*, 2013 WL 17108, at *5 ("[H]ad he gone to trial, [the petitioner] would have faced the same immigration issues following a trial

12

conviction."); *Betancur*, 2012 WL 4891758, at *3 (proceeding before a jury "would not have altered [petitioner's] immigration consequences," and "would, in all likelihood, ensure that [he] was imprisoned for an even longer term of incarceration before facing the same immigration result"); *Cuevas*, 2012 WL 3525425, at *10 (same).

Even were Petitioner's familial ties sufficient to make the decision to go to trial a rational choice in spite of the benefit he received and risks he avoided by pleading guilty, he is unable to show that the outcome in his case would have resulted in anything but his being deported. Under these circumstances, the Court cannot conclude that Petitioner has made the requisite showing of prejudice under the Supreme Court's test in *Strickland*.

**Conclusion**

Based on the conclusions set forth above, Petitioners writ of error *coram nobis* is denied.

SO ORDERED.

Dated: February 25, 2013
New York, New York

_____
ALISON J. NATHAN
United States District Judge